### SHORT *v.* JOHNSON.

#### Opinion delivered February 15, 1909.

INSTRUCTIONS—SHOULD NOT BE ABSTRACT.—It was error to instruct the jury in effect that defendants would be liable for the acts of a certain person within the scope of his authority as their agent if there was no legal evidence that such person was defendant's agent.

Appeal from Mississippi Circuit Court; *Frank Smith,* Judge; reversed.

*John I. Moore* and *W. J. Lamb,* for appellant.

1. The only agency alleged in the complaint was that of Hudson & Fowler. It was therefore erroneous to admit evidence of the alleged agency of Loss Moore—no amendment of the complaint having been made, and no foundation laid for proof of any other agency. 70 Ark. 319. The burden of proof that Moore had authority to bind appellant was upon the appellee. 3 Ill. App. 626; 5 Ill. App. 257; 58 Ill. App. 570.

2. The theory that the conversations of the appellee with Hudson were not sufficient to establish agency, but that the conversations between him and Moore might be sufficient, is inconsistent. 66 Ark. 10.

3. An agent's authority cannot be proved by his own declarations. 31 Ark. 212; 33 Ark. 251; *Id.* 316; 44 Ark. 213; 46 Ark. 222.

*J. T. Coston,* for appellee.

1. Relying on the insufficiency of the evidence, appellant has only presented a mere abstract of it. "Where a defect of proof is the ground of exception, all the evidence in anywise connected with the supposed defect must be set out." 48 Ark. 50.

2. The evidence was sufficient to show the agency of Loss Moore. He was shown to have been the office man at the time of these transactions, had charge of the business, and had been for a number of years with the firm. 110 S. W. (Ark.) 1036; 48 Ark. 181; 112 S. W. (Ark.) 896; 49 Ark. 323; 91 S. W. 184; 13 Am. Dec. 39.

3. It is patent that appellant ratified the purchase of the cotton. Hudson & Fowler's and Moore's authority as agent might have been limited, or they might not have had any authority, yet, when appellant ratified their acts, such ratification related back to the beginning of the transaction, and included the promise to pay the insurance premium and interest. Mechem on Agency, 130; 18 Wall. 340; 59 N. W. 14; 22 Fed. 113. The custom and usage with reference to payment of insurance premiums and interest by the purchaser became a part of the contract. 19 Ark. *277; 63 S. W. 57, 58; 31 Pac. 706; 19 S. S. 993.

4. At the trial no objection was made to the introduction of testimony tending to show Moore's agency, on the ground

that it was foreign to the pleadings, and that objection cannot now be urged. The pleadings were treated as amended to conform to the proof. 114 S. W. 222.

BATTLE, J. J. A. Johnson sued W. A. Short & Company and Hudson & Fowler for $172.54. Plaintiff was engaged in buying, selling, shipping and ginning cotton. He alleged in his complaint that during the fall and winter of 1906 he sold to W. A. Short & Company about 400 bales of cotton; that Short & Company agreed to pay interest on the purchase price of said cotton, and to pay for the insurance thereon from the date of sale, amounting to $169.09, and agreed to pay Johnson's draft on them for that sum; that the defendants Hudson & Fowler, who were at the time agents of Short & Company, also agreed to become personally responsible therefor; that on the third day of May, 1907, he drew a sight draft on defendants Short & Company for the $169.09, and the same was allowed to go to protest at an additional cost of $3.45. He asked for judgment for $172.54, the total amount of $169.09 and $3.45.

W. A. Short & Company answered and specifically denied the allegations of the complaint, so far as they referred to them.

In the trial of the issues of the action before a jury J. A. Johnson, the plaintiff, testified substantially as follows: In the fall and winter of 1906 he was ginning and buying cotton in Osceola. In the early part of October he sold to Hudson & Fowler, as agents of Short & Company, one hundred bales, and afterwards sold to them as such agents other cotton, and in all about 403 bales, valued at $18,818.41. He delivered the cotton to a compress company, and sent samples to Short & Company for inspection. The cotton was not paid for. He delivered the compress receipts to the Bank of Osceola with draft for purchase money attached. It was held up for about twenty days. On November 4, 1906, he "put in a call for Short & Company over the telephone," and talked about five minutes to Mr. Moore, who is one of the men in the office of Short & Company at Helena, Arkansas," and I said: 'You have got us in an awful fix; you have tied up all I can borrow. I can't buy any cotton. I wish you would send a man up here to take this question up with me, or let us know what you are going to do.' He said: 'Captain

Andy, we are going to take the cotton, and we will reimburse you for everything you are out on the insurance. * * * I will guaranty you won't lose a cent on the transaction. We will take the cotton.' This statement was made in response to my statement that I was paying interest on the overdraft and insurance. It has been the custom ever since 1897 that when the invoice and compress receipts are tendered to the buyer he immediately pays for it; it is then due; and if it is not paid promptly, he pays the insurance and interest on the draft. The interest and the insurance premium were $169.09." The only information that h; had that Hudson & Fowler were agents of Short & Company was what they told him.

W. A. Fowler testified: In the fall and winter of 1906 he was engaged in buying and selling cotton as a member of the firm of Hudson & Fowler in Osceola; that they had a connection with W. A. Short & Company; that their authority was nothing more than a wire or telephone message from Mr. Short to buy so many bales of cotton at a certain figure. "We bought one hundred bales from Johnson for W. A. Short & Company and shipped it to them. It is the custom of buyers of cotton to pay interest and insurance as stated by witness Johnson. Short & Company requested us to send samples of cotton purchased for them. We had instructions from Short & Company to buy so many bales of cotton of certain grades. We went to Mr. Johnson; and he said he could fill part of the bill; this was subject to samples. In one case we bought three hundred bales of Mr. Johnson for Short & Company, and sent samples of that to them at their request; and they finally approved the transaction and paid the purchase money."

He produced telegrams, purporting to be from Short & Company to Hudson & Fowler, in reference to the purchase of cotton.

J. A. Johnson further testified: Loss Moore, with whom he had the conversation as before stated, was the office man of Short & Company. He does not know whether Moore is a member of the firm of Short & Company or not, but he represented them a number of years ago. He thinks that Moore transacted most of the business, but he does not know of any business ex-

cept that he did with him; that he understood that he was their office man.

W. A. Short testified: He was a member of the firm of W. A. Short & Company. They do not owe a cent of the amount sued for, and Hudson & Fowler were not their agents. "During the cotton season of 1906 and 1907, J. W. Hudson, of the firm of Hudson & Fowler, undertook to make sales of cotton to us on description. The arrangement was as follows: The grade and staple were guarantied to be of a certain kind, but in all instances the samples of each lot of cotton was to be submitted to us for approval before the acceptance of the cotton. We had nothing to do with their manner of purchasing the same, nor did we know from whom they purchased, nor were they authorized to buy any cotton for our account."

Other members of the firm testified that Hudson & Fowler, or either of them, were not agents of their firm.

The court instructed the jury, over the objections of the defendants, in part, as follows:

"Gentlemen of the jury, the proof in this case is not legally sufficient to establish the agency of Hudson & Fowler with W. A. Short & Company, and the plaintiff cannot recover here on the ground that Hudson & Fowler were their agents.

"The questions submitted to you for your determination are, first, whether or not W. A. Short & Company ratified the acts upon which this suit is based or not. The question of ratification of this act depends upon the question whether or not the man, Loss Moore, with whom plaintiff claims the conversation was had, if such conversation was in fact had, was acting within the scope, or apparent scope, of his authority, and the burden of so showing is on the plaintiff; that is, even if you find from the conversation detailed by the plaintiff with one Loss Moore did occur, and, of course, you would have to first find that it did occur, and you would further be required to find that this party was in fact acting within the scope of his authority, or the apparent scope of his authority, before he could bind the persons named as the agents of the defendant.

"If the agency of Loss Moore be shown under the instructions given, then the principal is bound by the act of the agent

who acts within the scope or apparent scope of his authority; and by apparent scope of authority is meant such acts as a person of ordinary business prudence would reasonably presume that such agent had the authority to do in the name of his principal.

"You are instructed that it is not sufficient that it may have appeared to Mr. Johnson that Loss Moore was authorized to represent W. A. Short & Company. But you must further find from the evidence that Loss Moore either had the authority to bind the firm of W. A. Short & Company, or that said firm held him out as their agent or representative, and the fact that said Loss Moore talked to Johnson from the office of W. A. Short & Company would not, in itself, be sufficient."

The jury returned a verdict in favor of plaintiff for $172.54; and the court rendered judgment for that amount; and the defendants W. A. Short & Company appealed.

There was no legal evidence that Loss Moore was the agent of W. A. Short & Company, or that he was authorized to make the promise to J. A. Johnson to take the cotton and to reimburse him for everything he was "out on the insurance."

Inasmuch as the judgment in this case will be reversed and the cause remanded for a new trial, we state that, in our opinion, there was evidence adduced in the trial in this action sufficient to entitle the plaintiff to a submission to the jury of the question, were Hudson & Fowler agents of W. A. Short & Company in purchasing cotton of appellee?

On account of the failure to prove the agency of Loss Moore, the judgment of the trial court is reversed, and the cause is remanded for a new trial.